## PROXIMATE CAUSE OF INJURY FROM FALLING INTO EXPOSED MACHINERY.

[Circuit Court of Lucas County.]

HERMAN BRESEWSKI, AN INFANT, ETC., v. THE ROYAL BRUSH & BROOM COMPANY.

Decided, November 6, 1905.

*Negligence—Master and Servant—Proximate Cause—Where One Fell into an Unguarded Machine—Section 4364-89c.*

Where an employe in stumbling over a block of wood falls into an unguarded machine, and is injured by having his arm drawn into the machine, it is not competent to separate the occurrence into two parts, and say that the block of wood was the proximate cause and the machine merely the physical agency which caused the accident but the case should be submitted to the jury as a whole to determine whether or not under all the circumstances the defendant might have anticipated an accident of that character resulting from leaving the machine exposed.

PARKER, J.; HAYNES, J., and WILDMAN, J., concur.

This is an action to recover damages on account of personal injury to this infant. He was a boy fourteen years of age; he was empoyed by the Royal Brush & Broom Company, and while in their employ working in their factory in this city he fell, and, as he fell, his hand and arm went into part of the machinery and was caught by an unguarded belt and pulley or wheel, and was drawn into it and injured. It is averred in the petition that the company was negligent in that it allowed a certain block or piece of wood to remain upon the floor where he was at work, and that he stumbled over this and fell; and, further, that the company was negligent in that it did not keep the machinery guarded as required by the statute, and that this unguarded machinery was one of the causes of the physical injury he sustained.

At the close of the plaintiff's evidence, on motion of the defendant, the jury was directed to return a verdict for the defendant, which was done, and judgment was entered upon it;

and it is on account of this action that the plaintiff in error prosecutes error here.  It was said by the judge of the court below, in passing upon this motion, that there was no evidence tending to show that the defendant was in fault in the matter of allowing the block of wood to remain upon the floor, and it fairly appears from the evidence that the floor was kept clean and in good condition, and that if this block of wood was on the floor, as charged by the plaintiff, that it had been there but a few moments, not more than five minutes, and it did not appear that the attention of the defendant had been called to it, or that by the exercise of ordinary care it would have been drawn to it within that time.

It did appear, however, that this machinery was unguarded, that is to say, this belt and the wheel or pulley around which it revolved.  The plaintiff below attempted to prove that it would have been practicable to guard it as provided by statute, but he was not permitted to do this, and no weight or consideration was given to the fact of the machinery being unguarded, because of the view this court entertained, that the fact that the machinery was unguarded was not a proximate cause of the injury.

We are favored with the opinion of the judge of the court below and we observe that when he comes to discuss this matter fully and carefully upon the motion for a new trial, he states that the questions are two:  First, was the defendant negligent in not enclosing the belt and pulley?  and, second, if so, was that negligence the proximate cause of the accident?  And, he continues:

"As to the first question, Section 4364-89c, of the Revised Statutes, among other things, provides that the owners and operators of factories shall enclose all exposed cog wheels, fly wheels, band wheels, all main belts transmitting power from engine and dynamo, or other kind of machinery"—and then a hiatus on account of part of the statute not applicable—"with substantial railing."

Section 4 of the act 4364-89c of the statutes makes a violation thereof a misdemeanor; therefore the act is penal in its nature.  But whether it should be strictly or liberally construed

is, in my opinion, of no importance, for the reason that the provision above quoted states a rule of evidence, and nothing more can be claimed for it. There is no evidence that the belt with which the plaintiff came in contact was a main belt, and the word pulley is not to be found in that portion of the statute, to which I have referred. That the omission of the word pulley was intentional and its apparent distinction between a pulley and a band wheel or fly wheel is evidenced by the fact that provision is made therefor by the subsequent portion of the section.

Now, it seems to us, upon looking at this record, that the learned judge must have been under some misapprehension as to the evidence that had been adduced. He says, "It will be observed that there was no evidence that the belt with which the plaintiff came in contact was a main belt." But one Charles A. Bassett was a witness for the plaintiff. According to his testimony, he was a man of experience in machinery and with machinery of this character, and in the course of his examination he is asked this question:

"I will ask you how that machine was operated?" (I may say here that the machine in question on which the boy was hurt is technically called a sticker, it is a wood working machine).

"Q. I will ask you how that machine is operated?

"A. It is operated—do you mean driven?

"Q. Yes, driven: how does it get its power?

"A. It is driven by means of a belt over a line shaft very near over the machine, going to a countershaft to the machine." (I understand that to mean a counter-shaft which was part of the machine, a countershaft of the machine).

"Q. Around what did the belt pass?

"A. Around the pulleys, a large pulley on the main shaft and tight and loose pulley with the drive pulley of the machine.

"Q. Those pulleys, what other terms or names is there for them—wheels?

"A. Yes, sir; they are sometimes called wheels."

Then the court inquires:

"Q. Do you mean a band wheel?

"A. Not in this case.

"Q. The belt you have before you, is that a main belt?

"A. Yes, sir.

"Q. These wheels, are they wheels pertaining to the machinery?

"A. Yes, sir."

So it will be observed that the witness testifies distinctly that the belt in question was a main belt; he also says that this was not a band wheel, or at all events, he answers, when asked if he means a band wheel, "No, sir; not in this case." I am bound to say that we do not understand this answer of the witness. It seems to us from an examination of the photographs, and from the little knowledge we have of machinery and from the description of the witness as already given of this machine, that the wheel in question was in fact a band wheel. There must have been, we think, some misapprehension upon the part of the witness when he gave this answer, or he did not mean what the answer would seem upon its face to import. The wheel in question on the machine was what is called a tight and loose pulley, part of the wheel being tight to the shaft rim or face, the other part, perhaps half of the wheel being loose, so that when the belt connected with the main shaft is put over upon the part that is tight, it causes the machine to operate, but when it is moved over into the part of the wheel which is loose, of course the wheel simply goes round and round on the shaft and the machine does not operate.

Now, the statute on this subject is Section 4364-89c, and it provides in part as I have read from the opinion of the judge of the court below. It will be noticed that it mentions among other things to be protected, "exposed cog wheels, fly wheels, band wheels, all main belts transmitting power from engine to dynamo, or other kinds of machinery," etc. And we understand that a band wheel mentioned in this connection is such a wheel as is under consideration here, a wheel that is otherwise described as a pulley. The judge below thought not, because he says that, in another part of the section, pulleys are specifically mentioned and provision is made therefore. But the only other provision in the section where pulleys are mentioned is this, "the guarding of all saws and other wood cutting and wood shaping machinery, providing shifters for shifting belts, and poles and other appliances for removing and replacing belts on single pulleys, and ad-

justing runways and staging used for oiling and other pur-
poses, more than five feet from floors with hand railing and
providing countershafting with tight and loose pulleys, or such
other suitable appliances, in each room separate from the engine
room,'' etc.    There is no other provision for the guarding of
pulleys unless it is to be found in this provision, and we think
it is.    The judge speaks of fly wheels and band wheels as if they
were similar parts of the machine; but we understand that they
are quite different, that a fly wheel is not a band wheel and a
band wheel is not a fly wheel; that a pulley upon a machine
over which a belt or band passes, by which the machine is
operated, is a band wheel; that it can not well be anything else—
the very name of the wheel implies that.    I read from the
Standard dictionary the definition of pulley—one of the defi-
nitions, ''pulley, a wheel usually flat faced, or nearly so, driving,
carrying or being driven by a leather belt or the like; sometimes
called a belt pulley.''    And from Webster's Dictionary, under
the head of pulley, ''A wheel with a broad rim or grooved rim
for transmitting power or imparting power to the different
parts of machinery or for changing the direction of machinery
by means of a flat belt or round cord or loop.''    And we all
know that the danger in and about a belt and pulley is the fact
that the belt may draw one into the pulley, and that it is by
reason of being drawn between the belt and pulley that injuries
frequently occur; and we have no doubt but what it was the
purpose of the Legislature to guard against accidents of this
character.    And they could not enclose this kind of a wheel or
guard the belt without at the same time guarding the pulley.
It is sufficient, however, for the purposes of this case upon this
point to say that there is evidence in the record tending to show
that this is a main belt, and that a main belt must be guarded
is clear from the statute.

The fact that this main belt was not guarded clearly appears;
there is no dispute about it.    If an injury resulted to this boy
in consequence of the belt not being guarded, or the pulley and
belt, the condition of it affords some evidence of actionable
negligence.    What degree of evidence under the decisions of
this state, we are not prepared to say; we do not feel called upon

to say.  It is sufficient for the purposes of this case to furnish some evidence.  In some jurisdictions it is evidence of itself *per se* negligence; in some jurisdictions it raises a presumption of negligence; in others the term *prima facie* case of negligence is used.  But certainly it furnishes a scintilla of evidence upon which a case, so far as that feature is concerned, should go to the jury.  For rules on the subject and citations and decisions of different states, I cite Section 13, Shearman & Redfield on the Law of Negligence.  There have been some holdings along this line by the circuit courts and other courts inferior to the Supreme Court of the state; but our attention has not been drawn to any declaration by the the Supreme Court.

That leaves, then, for consideration, we think, only the question which the learned judge has mentioned as the second question in the case.  We think in deciding what he called the first question, that he must have overlooked the statement of the witness that this belt was a main belt.

Now, this young man was working at this machinery; there were many machines on the floor; it was a large factory, a large floor.  He was engaged in carrying blocks of wood from one side of the building part way across the building, down a broad aisle to another machine called a shaper.  He had been carrying during the forenoon of the day from a certain corner of the room, which did not require him to go very near to this machine, called the sticker, where he was afterward injured.  The blocks had all been carried from that part; he was required to go to a place near the wall immediately in the rear of this machine; and his direct way to carry these blocks over to the shaper where he was required to carry them was to use the alley way between this sticker and another machine, a broad, comfortable, safe place, apparently, something like five feet six inches in the clear; but as he was passing through there with his first load of blocks, which appears to have interfered somewhat with his seeing—for the blocks were piled up as high as his nose, as he testifies—he came to the vicinity of this machine and fell; he either stumbled or slipped or his ankle turned or something happened that he fell, and as he fell, this machine being to the right of him, he threw out his arm in some way; the machine was in

operation and his arm was caught be tween the belt and the pulley and wrenched and injured.

The court below was of the opinion that the fact that the pulley was not guarded was not a proximate cause of the injury, and the same line of argument is pursued by counsel for the defendant in error, that the proximate cause of the accident was this block of wood which caused the boy to fall, that the proximate cause of the injury, the physical injury to the boy may have been the failure to guard the machine; but that the failure to guard the machine was not the proximate cause of the accident. By this course of reasoning the so-called accident is divided for purposes of analysis into the accident of falling and the result of the accident, to-wit, the getting of his hand and arm into the machine and thereby injuring it. It seems to us that this division is not allowable, and is not warranted; that the whole occurrence comes within the description of the accident; that it was a continuous series of events, following one upon the other, the natural sequence of each succeeding event being dependent upon that which preceded it; and that the accident consisted not only in slipping and falling towards the machine, but in falling into the machine and in having the arm drawn into the machine and injured; and that while the falling or stumbling over the blocks may have been a sufficient and effective cause of the first part of the accident or falling toward the machine, the fact that the machine was not guarded and that the boy's hand and arm were thrown into it, whereby it was injured, was a proximate cause of that part of the accident.

The purpose of this statute, as we understand it, was and is to prevent just such occurrences and guard against them; that was the purpose of a great many of the provisions that we find in the statute relating to the guarding of machinery and the management of factories, and we suppose that there may be many cases where the primary movement, which results in an injury from such a machine, may be a pure accident or an inadvertence, and that the companies not observing this statute, the employer not observing this statute may be liable for the consequences of such accidents. It is intended to guard against

accidents and injuries resulting from one making a misstep, making a false move as he is at work about these dangerous machines, and if the employer can in all cases escape liability by showing that there was some other cause of the first primary movement, the initial movement, leading up to the ultimate accident and injury, then it is quite evident that the statute has served its purpose. By way of illustration, the statute on the subject of building may be mentioned, the statute that certain counter-floors shall be placed in buildings as they are in process of construction, Section 4238-20, which requires that:

"Whoever being the owner, lessee, agent, factor, architect, or contractor being engaged in and having supervision and charge of the building, erection or construction of any block, building or structure of more than two stories in height, who shall neglect or refuse to place or have placed upon the joists of each and every story of such block, building or structure above the second, as soon as the joists are in position, counter-floors of such quality and strength to render them perfectly safe the going to and fro thereon of all mechanics, laborers and other persons engaged upon the work of construction or the supervising the same, or in the building or placing of materials therefor, shall be deemed guilty of a misdemeanor, and upon conviction thereof in any court of competent jurisdiction, shall be fined," etc.

Now, it can be imagined in a case of that kind, where one is working upon part of the building that is not floored as the statute requires, he may fall, and by reason of the floor not being below where he falls, he goes on down through. He is not injured by the fall, for the floor is not there. He is not injured, it may be said, by the absence of the floor, that is to say, not precisely that—he is injured by coming to a sudden stop upon something beneath. It would be like the story we have heard of a workman upon a building falling down some thirty or forty feet. He said he was not injured by the fall, but he was jarred considerably by the sudden stop he made when he reached the ground. Now, we suppose that in a case of that kind, although one may inadvertently fall through the space where the floor should be, although he may step upon something whereby his ankle turns, he suddenly falls, that liability can not be escaped from on the ground or theory that the primary cause of the

accident was some inadvertent or accidental movement that he made, which caused him to fall.

In a case like this one at bar, to be sure if one keeps away from the machine at a safe distance, he will be safe, he will not be hurt, the machine will not travel to him, it will keep its place; but it is to be anticipated that a man will go near these machines and a sudden gust of wind will draw his clothes into the machine. Of course, if a person gets into a machine by a movement that is negligent on his part, that would be a defense; but if he is not negligent, if by mere inadvertence, when he is going about his work, by pure accident he falls into the machine, we are of the opinion that liability can not be escaped upon the theory that there was something lying back of the fall that brought him in contact with the machine; that that thing lying back, that primary cause is not only the proximate cause, but the only proximate cause of the injury.

We had occasion to consider this subject with some care in the case of *Ziehr* v. *The Maumee Paper Company,* 7 C. C.—N. S., 144. That was an accident in many respects like this. In that case there were unguarded cogs. Ziehr was working in the vicinity of them. The floor was slippery. There appeared to be no negligence upon the part of the defendant in having the floor slippery; that seemed to be unavoidable in the kind of work they were doing. But Ziehr slipped and threw out his hand for protection, and he came in contact with these cogs and was injured. We held in that case that the fact that the cogs were unguarded was a proximate cause of the injury, although the primary cause, and one of the proximate causes, was the slipping upon the floor, on account of which there would be no liability. And in the course of the opinion, by Judge Hull, in that case, a number of decisions are cited and some of them are commented upon, and in the course of that opinion reference was made to the case of *Blickley* v. *The Milner Company,* a case in which Mr. Blickley, while passing along the sidewalk in Jefferson street, fell into the area way by the side of the Milner building and was injured. It was unguarded; the area way was in the sidewalk, the place where an elevator was constructed to take goods into the cellar and out of the cellar; and although

the primary cause of that accident was the slipping upon the icy sidewalk, yet we held that one of the proximate causes of the injury was the failure of the Milner Company to guard this area way.   Our decision in that case was reversed by the Supreme Court; there were two grounds urged for a reversal, one that we were in the wrong upon the doctrine of proximate cause, the other that the record disclosed that Blickley was guilty of contributory negligence.   The decision of the Supreme Court was not reported, and we are, therefore, in ignorance of the real grounds upon which the Supreme Court decided the case.   But until we are better informed, we feel like adhering to that doctrine.   We feel that we were right in that case, and that we were right in the case of *Ziehr* v. *The Maumee Paper Company,* which is now pending in the Supreme Court; and upon the authority of these cases we feel that this case, so much like them, especially so much like the case of *Ziehr* v. *The Maumee Paper Company,* must be decided in the same way, at least until we are better informed.   Therefore, the judgment of this court will be that the judgment of the court below be reversed and the case remanded.

We do not mean to hold that the failure to guard the machine was, under the circumstances, as a matter of law, a proximate cause; but simply that it was a question to be submitted to the jury to say whether or not, under all the circumstances, the company might have reasonably anticipated an accident of this character resulting from this exposed machinery.

*Ashton Coldham,* for plaintiff in error.

*King & Tracy* and *H. W. Lloyd,* for defendant in error.